UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALEXANDER ALONSO MORALES,<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | Case No. 2:26-CV-01398-ART-MDC<br><br>ORDER GRANTING AMENDED HABEAS PETITION<br>(ECF No. 8) |

Alexander Alonso Morales is a citizen of Cuba who has been detained in Henderson Detention Center by the Department of Homeland Security ("DHS") for about fifteen months without an opportunity to seek release on bond. He brings this habeas petition to challenge his detention and his prospective third country removal. The Court finds that Mr. Alonso Morales is entitled to immediate release because his parole was not lawfully revoked before he was detained. Mr. Alonso Morales's claim against DHS's third country removal policy is not ripe for decision because the policy only applies to those with final orders of removal, which Mr. Alonso Morales does not have.

## I. Background

The parties are not in dispute about the material facts and administrative history. Mr. Alonso Morales entered the United States without inspection in January 2023 and was released on parole in the same month. In November 2023, while at liberty in the United States, he was issued a Notice to Appear ("NTA"). DHS did not take him into detention until about a year and a half later, on April 13, 2025. While Mr. Alonso Morales was in detention, he won withholding of removal due to his reasonable fear of persecution in Cuba based on his protected

characteristics, but his claim for asylum was denied. Mr. Alonso Morales appealed the Immigration Judge's denial of asylum to the Board of Immigration Appeals, which has not yet made a decision.

## II. Legal Standard

### A. Habeas Corpus Under 28 U.S.C. § 2441

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Due Process

Noncitizens present in the United States are entitled to due process protections. *See, e.g., Trump v. J.G.G.*, 604 U.S. 670 (internal citations and quotations omitted) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."); *Zadvydas*, 533 U.S. at 693 (applying due process in the context of detention). The rights of noncitizens include rights to "notice and opportunity to be heard 'appropriate to the nature of the case.'" *J.G.G.*, 604 U.S. at 673 (quoting *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)); *see also Mathews v. Eldrige*, 424 U.S. 319, 332 (1976).

To determine whether detention violates procedural due process, courts in the Ninth Circuit typically apply the *Mathews* test. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (observing that the Ninth Circuit and other circuits continue to apply the *Mathews* test notwithstanding the Government's heightened interest in detaining immigrants.) Under that three-part test, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Id.*

**III. Petitioner is Entitled to Immediate Release**

Mr. Alonso Morales is entitled to immediate release because his parole was never lawfully terminated. As this Court previously held, an immigration parolee is "owed prior notice, individualized assessment, and an opportunity to be heard before re-detention." *Arce Padilla v. Mullin*, No. 3:26-CV-270-ART-CSD, 2026 WL 1245462, at *3 (D. Nev. May 6, 2026). It violates due process to detain a person who has been paroled into the United States without lawfully terminating their parole first. *Id.*; *see Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026); *Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1178 (D. Nev. 2025).

To determine whether Mr. Alonso Morales' detention violates procedural due process, the court weighs (1) the private interest at stake, (2) the risk of an erroneous deprivation of that private interest and the value of additional safeguards, and (3) the Government's countervailing interests. *Rodriguez Diaz*, 53 F.4th at 1206 (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).

**1. The Private Interest**

Mr. Alonso Morales' interest in liberty is significant. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Hamdi*, 542 U.S. at 529; *see also Zadvydas*, 533 U.S. at 696. Even when an individual is subject to conditions of parole or release, they have "relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," and their liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that termination of parole "calls for some orderly process." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). District courts in this circuit have applied this principle to parole from immigration detention. *See, e.g., Ramirez Tesara v. Wamsley,* No. 2:25-CV-01723-MJP-TLF, 800 F.Supp.3d 1130 (W.D. Wash. Sept. 12, 2025) (collecting cases).

The first *Mathews* factor weighs heavily in his Mr. Alonso Morales' favor. Following his initial release from detention, he lived in the United States for over two years. He moved to Las Vegas in 2024 and obtained a job in a factory. He has three children in the United States. In the time since his initial parole, he has acquired a significant liberty interest entitled to the protection of the Due Process Clause. *Telenchana*, 2026 WL 696806, at *11; *Musaev v. Hermosillo*, No. 2:26-CV-00522-RAJ, 2026 WL 925611, at *5 (W.D. Wash. Apr. 6, 2026).

**2. Risk of Erroneous Deprivation**

Since Federal Respondents failed to comply with the requirements for revoking humanitarian parole, the risk of the erroneous deprivation of Mr. Alonso Morales's liberty is high. *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *7 (W.D. Wash. Jan. 20, 2026).

First, Federal Respondents argue that his parole was lawfully terminated when it expired after two years, 8 C.F.R. § 212.5(e)(1), but concede that no evidence exists to show that Mr. Alonso Morales' grant of parole had an expiration date, let alone what that date would be. Since this argument is conjectural, it must be rejected.

Second, Federal Respondents also say that Mr. Alonso Morales's November 2023 NTA was sufficient to terminate his parole. A NTA constitutes written notice of termination of humanitarian parole "unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i).

The November 2023 NTA was not sufficient to terminate Mr. Alonso Morales' parole for two reasons. One issue for Federal Respondents is that Mr. Alonso Morales' November 2023 NTA does appear to "otherwise specify" that it is not notice of termination of parole, as it charges him with being present in the United States without being admitted or paroled. (ECF No. 8-2.) As courts in this district have found, an NTA is ineffective at terminating parole if it "specifies, albeit erroneously, that [the petitioner] was not paroled to begin with." *Mendez-Gordillo v. Blanche*, No. 2:26-CV-00579-APG-MDC, 2026 WL 1706914, at *3 (D. Nev. June 11, 2026).

And, as Mr. Alonso Morales argued at the hearing on his habeas petition, it does not matter if the November 2023 NTA somehow constituted sufficient notice of termination of parole. Even if it did, there is no indication that DHS made an individualized determination regarding the revocation as required by regulation. If parole is not terminated by expiration, either "the purpose for which parole was authorized" must have been accomplished, or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such

parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Altogether, there is nothing to show that Mr. Alonso Morales was provided with notice of termination of parole, an opportunity to be heard, or otherwise afforded the process required by 8 C.F.R. § 212.5(e)(2)(i) and due process prior to re-detention. *See, e.g., Musaev*, 2026 WL 925611, at *6; *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026); *Telenchana*, 2026 WL 696806, at *7. Mr. Alonso Morales's parole appears to have been valid when he was arrested and taken into detention in April 2025, entitling him to the protections of 8 C.F.R. § 212.5(e)(2)(i).

When Mr. Alonso Morales was detained in April 2025, his parole was effectively revoked without any process at all, and the lack of any procedural safeguards whatsoever creates a risk of factual and legal mistakes. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1181; *Gaitan Coreas v. Mullin*, No. 2:26-CV-00591-GMN-DJA, 2026 WL 1121974, at *7 (D. Nev. Apr. 24, 2026). DHS initially found upon granting parole that Mr. Alonso Morales was not a danger or a flight risk, and no evidence has been submitted to show that DHS decided that circumstances changed. Respondents' failure to follow their own regulations created an undue risk of erroneous deprivation. Due process requires, at minimum, that the government justify the basis for re-detention, and that the noncitizen be given the opportunity to be heard with respect to re-detention at a meaningful time and in a meaningful manner. *Telenchana*, 2026 WL 696806 at *12, *Dieng*, 2026 WL 411857, at *8; *see also Gaitan Coreas*, 2026 WL 1121974, at *7; *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *6 (E.D.N.Y. Nov. 25, 2025). Accordingly, the second *Mathews* factor favors Mr. Alonso Morales.

**3. The Government's Interest**

The Government has a strong interest in the efficient administration of immigration laws, including those regarding detention of noncitizens. *Rodriguez Diaz*, 53 F.4th at 1208. However, the Government's interests will still be adequately protected if immigrants are afforded some minimal procedural guarantees. *Rodriguez Cabrera*, 808 F. Supp. 3d at 1182; *see Gaitan Coreas*, 2026 WL 1121974, at *7 ("[T]he government's interest in detaining Petitioner without a hearing is low"). Respondents have not argued that it is costly for them to provide notice of re-detention and an opportunity to be heard. *See Gaitan Coreas*, 2026 WL 1121974, at *7 ("[C]ustody hearings are routine and impose a 'minimal' cost.") Finally, the Government does not have an interest in detaining noncitizens in a manner that violates its own regulations. *O.F.B.,* 2025 WL 3277677, at *7. Accordingly, the third *Mathews* factor also favors Mr. Alonso Morales.

**C. Remedy**

In like cases, district courts in the Ninth Circuit have generally granted release on parole. *See, e.g. Arias v. Larose*, No. 3:25-CV-02595-BTM-MMP, 2025 WL 3295385, at *5 (S.D. Cal. Nov. 25, 2025); *Gaitan Coreas*, 2026 WL 1121974, at *8. The Constitution ordinarily "requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).

**IV. Petitioner's Claim for an Injunction Against Third-Country Removal is Not Yet Ripe**

DHS is entitled by law to attempt to remove certain individuals with withholding of removal to a third country, subject to restrictions and required procedures. 8 C.F.R. 1208.16(f); 8 U.S.C. § 1231(b). Mr. Alonso Morales, who has withholding of removal, asks for an injunction against a third country removal effected without due process. He argues that two recent DHS memoranda announce DHS's intention to remove those with final removal orders to third countries using an unconstitutional and unlawful process.

At the hearing on the habeas petition, Federal Respondents argued that Mr. Alonso Morales's claim was not ripe because his removal order was not final.

Article III's ripeness doctrine is designed to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). To protect against judicial engagement in hypothetical or speculative disputes, "[a] claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *id.* at 580–81).

As the third country removal policy may never apply to Mr. Alonso Morales, it is premature to decide this challenge. On their face, the third country removal policies that Mr. Alonso Morales challenges apply only to final orders of removal. (ECF Nos. 8-3, 8-4.) Mr. Alonso Morales does not have a final order of removal, since he has appealed his removal order to the Board of Immigration Appeals. (ECF No. 8-2.) His claim is denied without prejudice and with leave to refile, should his removal order become final in the future.

## V. Conclusion

It is hereby ordered that the Amended Petition for Writ of Habeas Corpus (ECF No. 8) is GRANTED. Petitioner's continued detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

It is further ordered that Petitioner's Application to Proceed In Forma Pauperis (ECF No. 9) is GRANTED *nunc pro tunc*.

It is further ordered that Petitioner must be RELEASED from Henderson Detention Center on Tuesday, July 21, 2026, between 12:00 and 3:00p.m. Counsel for Petitioner (or their designee/agent) will be permitted to wait in the lobby or equivalent area of the Henderson Detention Center during the release window. Petitioner's release is subject to the standard conditions of parole.

It is further ordered that, prior to any re-detention, Petitioner is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

It is further ordered that the parties must FILE a Joint Status Report no later than Tuesday, July 28, 2026, to certify compliance with the Court's order including (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on the standard conditions of parole; and (iii) the return of Petitioner's personal property, if applicable.

DATED: July 20, 2026

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE